MAST & CO. v. HENRY ET AL.

1. **Voluntary Conveyance:** FROM FATHER TO DAUGHTER: NOTICE OF
PRIOR EQUITIES: PURCHASE OF TAX TITLE BY DAUGHTER: SUBJECT-
ING PROPERTY TO FATHER'S DEBTS.   Where a daughter, without any
consideration, but with no fraudulent intent, took from her father a·
conveyance of land, with knowledge of her father's indebtedness, she
could not hold it free from liability to her father's creditors.   But
where the land was afterwards sold for taxes, and deeded to a *bona fide*
purchaser, who deeded the same to the daughter, *held* that the title so
obtained could not be assailed by the creditors of the father.

*Appeal from Webster Circuit Court.*

THURSDAY, DECEMBER 4.

ACTION in equity to subject real estate to payment of cer-
tain judgments recovered by the plaintiff against the defend-
ant, G. W. Henry, which real estate, the plaintiff claims,
Henry conveyed to his daughter and co-defendant, M. E.
Henry, for the purpose of defrauding his creditors.   The.
court found for the defendant, and entered a decree accord-
ingly.   The plaintiff appeals.

*Frank Farrell*, for appellant.

*R. M. Wright*, for appellee.

SEEVERS, J.—In 1874 Fiske & Co. recovered a judgment
against both of the defendants, and Hapgood & Co. recov-
ered a judgment about the same time against G. W. Henry
alone.   G. W. Bassett was attorney for the judgment plaint-
iffs.   The evidence warrants the conclusion that M. E.
·Henry was the principal debtor on the Fiske judgment.   At
that time·G. W. Henry was the owner of lot 1, in block 15,
in Fort Dodge, and he conveyed the same to M. E. Henry
on the first day of September, 1874.   No consideration was
paid by M. E. Henry for such conveyance.   In the same
month, but afterwards, Fiske & Co. sold said lot under exe-

cution issued on their judgment. It was sold in subdivisions, 1, 2, 3 and 4, and D. B. Fiske became the purchaser, and received a certificate of purchase. In June, 1875, Hapgood & Co. redeemed sub-lot 4 from said sale, and the certificate of purchase was assigned to said firm. Afterwards, Hapgood & Co. assigned the certificate of purchase to M. E. Henry, and the sheriff conveyed sub-lot 4 to her in October, 1875, and sub-lots 1, 2 and 3 were at the same time conveyed to D. B. Fiske by the sheriff, and, in November thereafter, Fiske conveyed the same to Bassett. A few days thereafter, Bassett quit-claimed sub-lot 2 to M. E. Henry, and she at the same time quit-claimed sub-lots 1 and 3 to Bassett. Afterwards, in November, 1875, all of said sub-lots were sold for delinquent taxes to Bassett, and in 1878 the treasurer conveyed the same to him. Thereafter, Bassett quit-claimed sub-lot 4 to M. E. Henry, and she quit-claimed sub-lot 2 to him. If these several conveyances are regarded as valid against the plaintiff, then, when this action was commenced, M. E. Henry only owned sub-lot 4, and the question is whether it can be subjected to the payment of the plaintiff's judgments. There is no evidence showing bad faith on the part of Bassett, and he must be regarded as a purchaser in good faith and for value of D. B. Fiske. He held the title to sub-lots 1, 2 and 3 under such conveyance, free from equities in favor of the plaintiff. But the contention of the plaintiff's counsel is that M. E. Henry cannot be regarded as such a purchaser, because the whole of lot 1 was conveyed to her in fraud of the rights of the plaintiff; that she had notice of the plaintiff's equities, and therefore cannot be regarded as a purchaser in good faith; and that she is not protected, although she obtained title from Bassett, who was a purchaser in good faith and for value. In support of this proposition, 2 Pom. Eq., § 754, is cited.

Counsel for the plaintiffs reply that the authority cited does not apply, because no actual fraud on the part of either

of the defendants in making such conveyance has been established. It is conceded, however, by counsel that M. E. Henry was a mere volunteer, and that the conveyance to her was void as to existing creditors. To such a party, however, counsel claim that the rule above stated has no application. Counsel for the plaintiffs further contend that the conveyance by the sheriff to M. E. Henry of sub-lot 4 should be regarded as a redemption merely, because it was sold for her debt, which she primarily was liable to pay. It is true that she was the principal debtor on the Fiske judgment, but she was not liable on the Hapgood judgment. To obtain the certificate of purchase, or to redeem from the sale, whichever it may be regarded, required nearly $400, and we find that the required amount was paid by M. E. Henry. To redeem from the sale under the Fiske judgment did not require more than $175. But Hapgood was the *bona fide* holder of the certificate of purchase, and to obtain an assignment thereof, or to redeem, M. E. Henry was required to and did pay, as we find from the evidence, about $225 in addition, to Hapgood, for which she in no respect was liable.

We are unable from the evidence to conclude that M. E. Henry received the conveyance of lot 1 from her father for the purpose of defrauding his creditors. But the title, while it remained in her, was liable to be divested at the instance of existing creditors of her father, because she had paid no consideration therefor. While she held the legal title of sub-lot 4 under the conveyance from the sheriff, said sub-lot was sold for delinquent taxes to Bassett, and he thereafter obtained a treasurer's deed. The validity of the tax title in Bassett is in no manner assailed, and the evidence warrants no other conclusion than that Bassett acted, in procuring such title, adversely to the defendants. When the tax sale was made, M. E. Henry owned the legal title to both sub-lots 2 and 4. When the title became vested in Bassett, she and her father were in possession of sub-lot 2. For the purpose of getting possession of the last-named lot without litiga-

tion, Bassett quit-claimed all his interest in sub-lot 4 to M. E. Henry. As Bassett's title under the tax deed was valid, and vested in him the absolute title, we think he could convey to M. E. Henry, and she would become vested with a good title, although she may have had notice of the plaintiff's equities, as above stated. She had not been guilty of fraud, but, at most, was a mere volunteer, with notice. 2 Pom. Eq., § 754, and authorities cited in note 2.

AFFIRMED.